COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-246-CV

 

 

CHRISTINE JACKSON                                                           APPELLANT

 

                                                   V.

 

FEDEX
GROUND PACKAGE                                                     APPELLEE

SYSTEM, INC.                                                                                     

 

                                              ------------

 

            FROM
THE 17TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

                                                    

                                              ------------      

I.  Introduction








The trial court granted
summary judgment for Appellee FedEx Ground Package System, Inc. on Appellant
Christine Jackson=s claim that
she was discharged in retaliation for filing a worker=s compensation claim.  The
primary issue we address in this appeal is whether Jackson met her burden to
present summary judgment evidence raising a genuine issue of material fact on
whether FedEx=s stated
reason for her terminationCthat she violated the company=s written policy requiring an employee who sustained an on-the-job
injury to obtain a drug and alcohol screening test at the time of his or her
initial medical treatmentCwas
pretextual or discriminatory.  Because,
even viewing all of the summary judgment in the light most favorable to Jackson
and engaging in all reasonable inferences in her favor, no such controverting
summary judgment evidence exists, we will affirm.

II.  Factual and Procedural Background

Jackson, who worked for
FedEx, sustained a work-related injury on Friday, September 16, 2005, when a
five-gallon drum slid off the package slide and injured her back.  Later that day, Jackson told her coordinator,
Kevin Bedliner, that she was hurt; he referred Jackson to their supervisor,
Eric Fergerson.  According to Jackson,
Fergerson told her she did not need to go to the doctor.  He told her to take some ice packs that he
provided and to go home and rest. 
Fergerson did not give Jackson an authorization for medical treatment
form.  








On Monday, September 19,
2005, Jackson went to FedEx and spoke with Tyrol Lemon, an employee relation
manager.  Jackson told him that she had
injured her back the previous Friday and needed to seek medical treatment.  Jackson told Lemon that she was going to K
Clinic, and A[h]e didn=t say anything.@  Lemon gave Jackson an authorization for
medical treatment and a drug screening packet. 
Lemon also provided Jackson with a map and a list of facilities that
conducted drug screenings; some of the facilities listed were open until 9:00
p.m.  Jackson said that Lemon did not
give her a time frame for when she was to complete the drug screening test. 

That afternoon, on Monday,
September 19, Jackson sought medical treatment from K Clinic.  Jackson, however, did not complete the drug
screening test that day.  

The next day, Jackson went to
a facility and completed the drug screening test.  She then went back to FedEx and gave Lemon
the completed drug screening paperwork. 
That afternoon, Lemon called Jackson at home and asked why she had gone
to K Clinic.  Jackson said that Lemon Asounded upset.@ 








After receiving Jackson=s paperwork, Lemon consulted with two safety managers to verify that
Jackson=s decision to wait a day to take the drug screening testCthat is, to not submit to a drug screening test at the time of her
initial medical treatmentCdid, in
fact, violate FedEx=s drug
screening policy.[2]  Both safety managers indicated that Jackson=s refusal to submit to a drug screening test concurrently with her
initial medical treatment was a violation of FedEx=s written post-injury drug screening policy.  Lemon met with FedEx=s senior manager of the Fort Worth hub to discuss Jackson=s violation, and they made the decision to terminate her. 

Jackson said that when Lemon
terminated her, he told her that she was being terminated for failing to take
the drug test within twenty-four hours. 
Because Jackson believed that she was terminated for seeking treatment
from K Clinic instead of the company doctor, she filed suit for wrongful
discharge. 








FedEx answered.  More than a year later, FedEx filed a motion
for summary judgment.  As one ground for
summary judgment, FedEx argued that it was entitled to judgment as a matter of
law because it conclusively established a legitimate, nondiscriminatory reason
for Jackson=s
terminationCJackson=s violation of FedEx=s post-injury drug screening policyCand because the burden then shifted back to Jackson to produce summary
judgment evidence of a retaliatory motive or that this reason was a pretext for
retaliation, a burden which Jackson could not and did not meet.  

Approximately one month later
(seven days before the scheduled summary judgment hearing and eleven days
before the trial setting requested by Jackson), Jackson filed a motion for
continuance along with her response to FedEx=s motion for summary judgment. 
Jackson=s response
to FedEx=s summary judgment motion claimed that genuine issues of material fact
existed as to whether there was a causal connection between her workers= compensation claim and her termination, as to whether FedEx had a
retaliatory motive for terminating her, and as to whether FedEx acted with
malice in terminating her. 

FedEx filed a reply to
Jackson=s response, arguing that Jackson had failed to controvert FedEx=s legitimate, nondiscriminatory reason for her termination.  FedEx also objected to Jackson=s summary judgment evidence.

The trial court held a
hearing on FedEx=s motion for
summary judgment and granted the motion. 
The trial court thereafter signed an order sustaining FedEx=s objections to Jackson=s summary judgment evidence. 
This appeal followed.








 

 

III.  Motion for Continuance

In her first issue, Jackson
contends that the trial court abused its discretion by denying her request for
a continuance.  The basis for the
continuance sought by Jackson on March 29, 2007, was that she needed additional
time to contact ex-FedEx employees contained on a list provided to her by FedEx
on October 11, 2006.  

Generally, a party moving for
a continuance of a summary judgment hearing must obtain a ruling on its motion
to preserve a complaint for appellate review. 
See Tex. R. App. P.
33.1; Rangel v. State Bar of Tex., 898 S.W.2d 1, 3 (Tex. App.CSan Antonio 1995, no writ).  A
party may preserve error even in the absence of a ruling on a motion for
continuance if the party objects to the trial court=s refusal to rule.  See Tex. R. App. P. 33.1(a)(2)(B); Sw.
Country Enters., Inc. v. Lucky Lady Oil Co., 991 S.W.2d 490, 493 (Tex. App.CFort Worth 1999, pet. denied). 








 Here, Jackson did not obtain a ruling on her
motion for continuance and also failed to request that the hearing on her
motion for continuance be recorded. 
Absent a record of the continuance hearing, there is no indication that
Jackson objected to the trial court=s failure to rule on her motion for continuance.  Consequently, Jackson waived any error
concerning the trial court=s failure to grant a continuance of the summary judgment hearing.  See Hornsby v. Alter=s Gem Jewelry, Ltd., No.
09-04-00542-CV, 2005 WL 3073790, at *3 (Tex. App.CBeaumont Nov. 17, 2005, pet. denied) (mem. op.).   For all these reasons, we overrule Jackson=s first issue.

IV.  Jackson=s Summary Judgment Evidence

In her second issue, Jackson
claims that the trial court erred by sustaining FedEx=s objections to her summary judgment evidence.  In her appellate brief, however, Jackson does
not articulate how each of the trial court=s rulings on FedEx=s objections to her summary judgment evidence are purportedly
erroneous.  Instead, she simply globally
claims that she Adisagrees
with all of the bases alleged by FedEx for its objections@ and Acontends
that the objections to the deposition testimony of Jackson and her sister are
particularly weak.@  Thus, Jackson has waived her complaint that
the trial court erred by sustaining FedEx=s objections to her summary judgment evidence.  See, e.g., Cantu v. Horany, 195 S.W.3d
867, 871 (Tex. App.CDallas 2006,
no pet.) (stating that appellant waives challenge to evidentiary ruling unless
he challenges all possible grounds for trial court=s ruling sustaining objection). 









Nonetheless, for purposes of
this appeal, we assume that the trial court should have considered all of
Jackson=s summary judgment evidence; even considering all of her evidence and
viewing all of the evidence in the light most favorable to Jackson, as
explained below, no evidence exists creating a genuine issue of material fact
that FedEx=s
enforcement of its written post-injury drug screening policy was pretextual or
retaliatory.  Because Jackson has waived
her second issue complaining that the trial court erred by sustaining FedEx=s objections to her summary judgment evidence and because we
nonetheless consider all of Jackson=s summary judgment evidence in our analysis, we overrule her second
issue.

V.  Summary Judgment Was Proper

In her third issue, Jackson
contends that the trial court erred by granting FedEx=s motion for summary judgment. 

A.     Standard of Review

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
Civ. P. 166a(b), (c).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798. 

B.     Law Applicable to
Retaliatory Discharge Claims








Section 451.001 of the Texas
Labor Code prohibits an employer from discharging an employee for filing a
workers= compensation claim in good faith. 
Tex. Labor Code Ann. ' 451.001 (Vernon 2006).  The
employee has the initial burden of demonstrating a causal link between the
discharge and the filing of a workers= compensation claim.  Benners
v. Blanks Color Imaging, Inc., 133 S.W.3d 364, 369 (Tex. App.CDallas 2004, no pet.).  The
employee must show that the employer=s action would not have occurred when it did had the employee=s protected conductCfiling a workers=
compensation claimCnot
occurred.  Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 386, 388 (Tex. 2005); see Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996). 

Once the employee establishes
a causal link, the employer bears the burden to rebut the alleged improper
termination by showing that a legitimate reason exists for termination.  See Cont=l Coffee Prods. Co., 937 S.W.2d
at 450B51.  Thereafter, to survive a
motion for summary judgment, the burden shifts back to the employee to produce
controverting evidence raising a fact issue as to a retaliatory motive or
nonuniform enforcement of a termination policy. 
Id. at 444; McIntyre v. Lockheed Corp., 970 S.W.2d 695,
697 (Tex. App.CFort Worth
1998, no pet.).

C.     Analysis








For purposes of our analysis,
we will assume that Jackson met her initial burden of demonstrating a causal
link between the discharge and the filing of a workers= compensation claim.[3]  See, e.g., Benners, 133 S.W.3d at
369.  Consequently, we next examine
whether FedEx met its burden to rebut the alleged improper termination by
showing that a legitimate reason existed for termination.  See Cont=l Coffee Prods. Co., 937 S.W.2d
at 450-51.








FedEx=s summary judgment evidence establishes that it had a written
post-injury drug screening policy in effect, that the policy required an
employee who sustained an on-the-job injury that required medical treatment to
obtain a drug screening test at the time of the employee=s initial medical treatment, and that the refusal to comply with the
policy would result in termination. 
FedEx=s summary
judgment evidence showed that Jackson was made aware of this policy in June
2005 and signed a safety meeting sheet indicating her awareness of the
policy.  FedEx also produced summary
judgment evidence establishing that its policies, including its post-injury
drug screening policy, were posted on a website created specifically for
package handlers like Jackson and that computers were provided at FedEx=s Fort Worth facility so that package handlers like Jackson could
freely access the policies.  The summary
judgment evidence conclusively establishes, and indeed Jackson agrees, that she
did not submit to a post-injury drug screening test at the time she received
her initial medical treatment for her injury. 


An employer who terminates an
employee for violating a written company policy or rule cannot be liable for
retaliatory discharge as long as the rule is uniformly enforced.  See, e.g., Haggar Clothing Co., 164
S.W.3d at 388 (dealing with enforcement of one-year leave-of-absence policy); Cont=l Coffee Prods. Co., 937 S.W.2d
at 444 (dealing with enforcement of three-day rule governing employee
absences); Santillan v. Wal-Mart, 203 S.W.3d 502, 506 (Tex. App.CEl Paso 2006, pet. denied) (dealing with enforcement of requirement
that employment authorization documents be timely renewed). Thus, in light of
FedEx=s summary judgment evidence conclusively establishing that Jackson=s termination decision was based on her failure to comply with its
written post-injury drug screening policy, the burden shifted back to Jackson
to produce controverting evidence raising a fact issue as to a retaliatory
motive or nonuniform enforcement of FedEx=s post-injury drug screening policy. 
See Haggar Clothing Co., 164 S.W.3d at 388; Cont=l Coffee Prods. Co., 937 S.W.2d
at 444, 450B51; Santillan,
203 S.W.3d at 506.   








In an effort to discharge
this burden, Jackson first points out that when FedEx terminated her, it knew
she was pursing a workers=
compensation claim. The fact that a manager has some knowledge that an employee
has filed a workers=
compensation claim does not, by itself, raise a genuine issue of material
fact.  See Santillan, 203 S.W.3d
at 507.








Jackson next claims that she
produced summary judgment evidence that FedEx=s stated reason for discharge was false and that FedEx had exhibited a
pattern of discrimination toward employees who filed workers= compensation claims.  Jackson
points to multiple employee lists attached to her summary judgment
response.  The problem with these
employee lists, however, is that they do not reflect the specific reason for
each termination.[4]  No affidavit exists in the summary judgment
record explaining these lists, how they were generated, or how they purportedly
show a pattern of nonuniform enforcement of FedEx=s post-injury drug screening policy. 
To the contrary, FedEx proffered summary judgment evidence that only two
peopleCone of whom was JacksonChad failed to comply with the drug policy and that both had been
terminated.  Thus, Jackson=s summary judgment evidence does not raise a genuine issue of material
fact on whether FedEx did not uniformly enforce its post-injury drug screening
policy.

Jackson also argues that
FedEx=s stated reason for her termination was false because Lemon told her
that she was being terminated for failing to take the drug test within
twenty-four hours even though FedEx=s drug policy requires a post-injury drug screening test be conducted
at the time of initial medical treatment, not within twenty-four hours.  Jackson claims she did take the drug test
within twenty-four hours of being told to do so; consequently, FedEx=s reason for termination is false.








The fact that Jackson took
the drug test within twenty-four hours of when she was told to take it does not
make FedEx=s stated
reason for her discharge false.  Jackson
admitted that she did not complete the drug screening until the day after she
went to K Clinic for her initial medical treatment.  Jackson=s admission shows that she failed to comply with FedEx=s policy on post-injury drug screening, a policy that she was deemed
to have knowledge of by virtue of her attendance at the safety meeting that
covered the drug policy.  Thus, Jackson
has failed to meet her summary judgment burden to raise a genuine issue of
material fact as to whether FedEx=s stated reason for her discharge was false.  See id. at 507B08 (holding that employer=s reason for termination was not false when it initially told employee
that she was being terminated for failing to provide necessary employment
documents in a timely manner and later reported on employee=s unemployment benefits claim that employee had been terminated for Amisconduct@; employee
failed to show that her Amisconduct@ was anything other than her failure to file the necessary employment
documents).

We hold that Jackson failed
to produce controverting evidence raising a fact issue as to FedEx=s retaliatory motive or nonuniform enforcement its post-injury drug
screening policy.  See Haggar Clothing
Co., 164 S.W.3d at 388; Cont=l Coffee Prods. Co., 937 S.W.2d
at 444, 450B51; Santillan,
203 S.W.3d at 506; see also Jordan v. BAE Automated Sys., No.
05-96-01488-CV, 1998 WL 242413, at *2 (Tex. App.CDallas May 15, 1998, no pet.) (not designated for publication)
(upholding summary judgment because appellant admitted in deposition that he
was discharged for taking a pain pill without a prescription in violation of
company=s drug policy).  Accordingly, we
overrule Jackson=s third
issue.

VI.  Conclusion

Having overruled Jackson=s three issues, we affirm the trial court=s grant of summary judgment in favor of FedEx.

 

SUE WALKER

JUSTICE








PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED:
April 24, 2008











[1]See Tex. R. App. P. 47.4.





[2]FedEx=s
post-injury drug screening policy states:

 

Any
employee who sustains an on-the-job injury that requires medical treatment will
be required to have a post-injury drug and alcohol screening.  This screening must be administered at the
time of initial medical treatment, but should not preclude immediate
medical attention when warranted.

 

. . .
.

 

If an employee fails
to cooperate, or refuses a post-injury drug and alcohol screening for any
reason, or if the screening results are altered, substituted or tampered with
in any way, the employee will be terminated. [Emphasis added.]  





[3]Consequently,
we do not discuss Jackson=s
causal links summary judgment evidence except to the extent that it overlaps
with our subsequent discussion below concerning whether Jackson met her burden
to produce controverting evidence raising a fact issue as to a retaliatory
motive or nonuniform enforcement of FedEx=s post-injury drug screening
policy.





[4]For
instance, the code given for Jackson=s termination was AViolation
of Rules.@  The employee list contains this same code for
approximately ten employees.