
# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-246-CV

CHRISTINE JACKSON                                          APPELLANT

V.

FEDEX GROUND PACKAGE                                        APPELLEE
SYSTEM, INC.

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. INTRODUCTION

The trial court granted summary judgment for Appellee FedEx Ground Package System, Inc. on Appellant Christine Jackson's claim that she was discharged in retaliation for filing a worker's compensation claim. The primary issue we address in this appeal is whether Jackson met her burden to present

---

[1] *See* TEX. R. APP. P. 47.4.

summary judgment evidence raising a genuine issue of material fact on whether FedEx's stated reason for her termination—that she violated the company's written policy requiring an employee who sustained an on-the-job injury to obtain a drug and alcohol screening test at the time of his or her initial medical treatment—was pretextual or discriminatory. Because, even viewing all of the summary judgment in the light most favorable to Jackson and engaging in all reasonable inferences in her favor, no such controverting summary judgment evidence exists, we will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Jackson, who worked for FedEx, sustained a work-related injury on Friday, September 16, 2005, when a five-gallon drum slid off the package slide and injured her back. Later that day, Jackson told her coordinator, Kevin Bedliner, that she was hurt; he referred Jackson to their supervisor, Eric Fergerson. According to Jackson, Fergerson told her she did not need to go to the doctor. He told her to take some ice packs that he provided and to go home and rest. Fergerson did not give Jackson an authorization for medical treatment form.

On Monday, September 19, 2005, Jackson went to FedEx and spoke with Tyrol Lemon, an employee relation manager. Jackson told him that she had injured her back the previous Friday and needed to seek medical treatment.

2

Jackson told Lemon that she was going to K Clinic, and "[h]e didn't say anything." Lemon gave Jackson an authorization for medical treatment and a drug screening packet. Lemon also provided Jackson with a map and a list of facilities that conducted drug screenings; some of the facilities listed were open until 9:00 p.m. Jackson said that Lemon did not give her a time frame for when she was to complete the drug screening test.

That afternoon, on Monday, September 19, Jackson sought medical treatment from K Clinic. Jackson, however, did not complete the drug screening test that day.

The next day, Jackson went to a facility and completed the drug screening test. She then went back to FedEx and gave Lemon the completed drug screening paperwork. That afternoon, Lemon called Jackson at home and asked why she had gone to K Clinic. Jackson said that Lemon "sounded upset."

After receiving Jackson's paperwork, Lemon consulted with two safety managers to verify that Jackson's decision to wait a day to take the drug screening test—that is, to not submit to a drug screening test at the time of her initial medical treatment—did, in fact, violate FedEx's drug screening policy.[2]

_____

[2] FedEx's post-injury drug screening policy states:

3

Both safety managers indicated that Jackson's refusal to submit to a drug screening test concurrently with her initial medical treatment was a violation of FedEx's written post-injury drug screening policy. Lemon met with FedEx's senior manager of the Fort Worth hub to discuss Jackson's violation, and they made the decision to terminate her.

Jackson said that when Lemon terminated her, he told her that she was being terminated for failing to take the drug test within twenty-four hours. Because Jackson believed that she was terminated for seeking treatment from K Clinic instead of the company doctor, she filed suit for wrongful discharge.

FedEx answered. More than a year later, FedEx filed a motion for summary judgment. As one ground for summary judgment, FedEx argued that it was entitled to judgment as a matter of law because it conclusively established a legitimate, nondiscriminatory reason for Jackson's

---

Any employee who sustains an on-the-job injury that requires medical treatment will be required to have a post-injury drug and alcohol screening. This *screening must be administered at the time of initial medical treatment*, but should not preclude immediate medical attention when warranted.

. . . .

If an employee fails to cooperate, or refuses a post-injury drug and alcohol screening for any reason, or if the screening results are altered, substituted or tampered with in any way, *the employee will be terminated*. [Emphasis added.]

4

termination—Jackson's violation of FedEx's post-injury drug screening policy—and because the burden then shifted back to Jackson to produce summary judgment evidence of a retaliatory motive or that this reason was a pretext for retaliation, a burden which Jackson could not and did not meet.

Approximately one month later (seven days before the scheduled summary judgment hearing and eleven days before the trial setting requested by Jackson), Jackson filed a motion for continuance along with her response to FedEx's motion for summary judgment. Jackson's response to FedEx's summary judgment motion claimed that genuine issues of material fact existed as to whether there was a causal connection between her workers' compensation claim and her termination, as to whether FedEx had a retaliatory motive for terminating her, and as to whether FedEx acted with malice in terminating her.

FedEx filed a reply to Jackson's response, arguing that Jackson had failed to controvert FedEx's legitimate, nondiscriminatory reason for her termination. FedEx also objected to Jackson's summary judgment evidence.

The trial court held a hearing on FedEx's motion for summary judgment and granted the motion. The trial court thereafter signed an order sustaining FedEx's objections to Jackson's summary judgment evidence. This appeal followed.

### III. MOTION FOR CONTINUANCE

In her first issue, Jackson contends that the trial court abused its discretion by denying her request for a continuance. The basis for the continuance sought by Jackson on March 29, 2007, was that she needed additional time to contact ex-FedEx employees contained on a list provided to her by FedEx on October 11, 2006.

Generally, a party moving for a continuance of a summary judgment hearing must obtain a ruling on its motion to preserve a complaint for appellate review. *See* TEX. R. APP. P. 33.1; *Rangel v. State Bar of Tex.*, 898 S.W.2d 1, 3 (Tex. App.—San Antonio 1995, no writ). A party may preserve error even in the absence of a ruling on a motion for continuance if the party objects to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a)(2)(B); *Sw. Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 493 (Tex. App.—Fort Worth 1999, pet. denied).

Here, Jackson did not obtain a ruling on her motion for continuance and also failed to request that the hearing on her motion for continuance be recorded. Absent a record of the continuance hearing, there is no indication that Jackson objected to the trial court's failure to rule on her motion for

6

continuance. Consequently, Jackson waived any error concerning the trial court's failure to grant a continuance of the summary judgment hearing. *See Hornsby v. Alter's Gem Jewelry, Ltd.*, No. 09-04-00542-CV, 2005 WL 3073790, at \*3 (Tex. App.—Beaumont Nov. 17, 2005, pet. denied) (mem. op.). For all these reasons, we overrule Jackson's first issue.

### IV. JACKSON'S SUMMARY JUDGMENT EVIDENCE

In her second issue, Jackson claims that the trial court erred by sustaining FedEx's objections to her summary judgment evidence. In her appellate brief, however, Jackson does not articulate how each of the trial court's rulings on FedEx's objections to her summary judgment evidence are purportedly erroneous. Instead, she simply globally claims that she "disagrees with all of the bases alleged by FedEx for its objections" and "contends that the objections to the deposition testimony of Jackson and her sister are particularly weak." Thus, Jackson has waived her complaint that the trial court erred by sustaining FedEx's objections to her summary judgment evidence. *See, e.g., Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.) (stating that appellant waives challenge to evidentiary ruling unless he challenges all possible grounds for trial court's ruling sustaining objection).

Nonetheless, for purposes of this appeal, we assume that the trial court should have considered all of Jackson's summary judgment evidence; even

7

considering all of her evidence and viewing all of the evidence in the light most favorable to Jackson, as explained below, no evidence exists creating a genuine issue of material fact that FedEx's enforcement of its written post-injury drug screening policy was pretextual or retaliatory. Because Jackson has waived her second issue complaining that the trial court erred by sustaining FedEx's objections to her summary judgment evidence and because we nonetheless consider all of Jackson's summary judgment evidence in our analysis, we overrule her second issue.

## V. SUMMARY JUDGMENT WAS PROPER

In her third issue, Jackson contends that the trial court erred by granting FedEx's motion for summary judgment.

### A. Standard of Review

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *see* TEX. R. CIV. P. 166a(b), (c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *IHS Cedars Treatment Ctr.*, 143 S.W.3d at 798.

### B. Law Applicable to Retaliatory Discharge Claims

8

Section 451.001 of the Texas Labor Code prohibits an employer from discharging an employee for filing a workers' compensation claim in good faith. TEX. LABOR CODE ANN. § 451.001 (Vernon 2006). The employee has the initial burden of demonstrating a causal link between the discharge and the filing of a workers' compensation claim. *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.). The employee must show that the employer's action would not have occurred when it did had the employee's protected conduct—filing a workers' compensation claim—not occurred. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005); *see Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

Once the employee establishes a causal link, the employer bears the burden to rebut the alleged improper termination by showing that a legitimate reason exists for termination. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450–51. Thereafter, to survive a motion for summary judgment, the burden shifts back to the employee to produce controverting evidence raising a fact issue as to a retaliatory motive or nonuniform enforcement of a termination policy. *Id*. at 444; *McIntyre v. Lockheed Corp.*, 970 S.W.2d 695, 697 (Tex. App.—Fort Worth 1998, no pet.).

**C.** **Analysis**

9

For purposes of our analysis, we will assume that Jackson met her initial burden of demonstrating a causal link between the discharge and the filing of a workers' compensation claim.[3] *See, e.g., Benners*, 133 S.W.3d at 369. Consequently, we next examine whether FedEx met its burden to rebut the alleged improper termination by showing that a legitimate reason existed for termination. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450-51.

FedEx's summary judgment evidence establishes that it had a written post-injury drug screening policy in effect, that the policy required an employee who sustained an on-the-job injury that required medical treatment to obtain a drug screening test at the time of the employee's initial medical treatment, and that the refusal to comply with the policy would result in termination. FedEx's summary judgment evidence showed that Jackson was made aware of this policy in June 2005 and signed a safety meeting sheet indicating her awareness of the policy. FedEx also produced summary judgment evidence establishing that its policies, including its post-injury drug screening policy, were posted on a website created specifically for package handlers like Jackson and that

---

[3] Consequently, we do not discuss Jackson's causal links summary judgment evidence except to the extent that it overlaps with our subsequent discussion below concerning whether Jackson met her burden to produce controverting evidence raising a fact issue as to a retaliatory motive or nonuniform enforcement of FedEx's post-injury drug screening policy.

computers were provided at FedEx's Fort Worth facility so that package handlers like Jackson could freely access the policies. The summary judgment evidence conclusively establishes, and indeed Jackson agrees, that she did not submit to a post-injury drug screening test at the time she received her initial medical treatment for her injury.

An employer who terminates an employee for violating a written company policy or rule cannot be liable for retaliatory discharge as long as the rule is uniformly enforced. *See, e.g., Haggar Clothing Co.*, 164 S.W.3d at 388 (dealing with enforcement of one-year leave-of-absence policy); *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 444 (dealing with enforcement of three-day rule governing employee absences); *Santillan v. Wal-Mart*, 203 S.W.3d 502, 506 (Tex. App.—El Paso 2006, pet. denied) (dealing with enforcement of requirement that employment authorization documents be timely renewed). Thus, in light of FedEx's summary judgment evidence conclusively establishing that Jackson's termination decision was based on her failure to comply with its written post-injury drug screening policy, the burden shifted back to Jackson to produce controverting evidence raising a fact issue as to a retaliatory motive or nonuniform enforcement of FedEx's post-injury drug screening policy. *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 444, 450–51; *Santillan*, 203 S.W.3d at 506.

In an effort to discharge this burden, Jackson first points out that when FedEx terminated her, it knew she was pursing a workers' compensation claim. The fact that a manager has some knowledge that an employee has filed a workers' compensation claim does not, by itself, raise a genuine issue of material fact. *See Santillan*, 203 S.W.3d at 507.

Jackson next claims that she produced summary judgment evidence that FedEx's stated reason for discharge was false and that FedEx had exhibited a pattern of discrimination toward employees who filed workers' compensation claims. Jackson points to multiple employee lists attached to her summary judgment response. The problem with these employee lists, however, is that they do not reflect the specific reason for each termination.[4] No affidavit exists in the summary judgment record explaining these lists, how they were generated, or how they purportedly show a pattern of nonuniform enforcement of FedEx's post-injury drug screening policy. To the contrary, FedEx proffered summary judgment evidence that only two people—one of whom was Jackson—had failed to comply with the drug policy and that both had been terminated. Thus, Jackson's summary judgment evidence does not raise a

---

[4] For instance, the code given for Jackson's termination was "Violation of Rules." The employee list contains this same code for approximately ten employees.

12

genuine issue of material fact on whether FedEx did not uniformly enforce its post-injury drug screening policy.

Jackson also argues that FedEx's stated reason for her termination was false because Lemon told her that she was being terminated for failing to take the drug test within twenty-four hours even though FedEx's drug policy requires a post-injury drug screening test be conducted at the time of initial medical treatment, not within twenty-four hours. Jackson claims she did take the drug test within twenty-four hours of being told to do so; consequently, FedEx's reason for termination is false.

The fact that Jackson took the drug test within twenty-four hours of when she was told to take it does not make FedEx's stated reason for her discharge false. Jackson admitted that she did not complete the drug screening until the day after she went to K Clinic for her initial medical treatment. Jackson's admission shows that she failed to comply with FedEx's policy on post-injury drug screening, a policy that she was deemed to have knowledge of by virtue of her attendance at the safety meeting that covered the drug policy. Thus, Jackson has failed to meet her summary judgment burden to raise a genuine issue of material fact as to whether FedEx's stated reason for her discharge was false. *See id.* at 507–08 (holding that employer's reason for termination was not false when it initially told employee that she was being

terminated for failing to provide necessary employment documents in a timely manner and later reported on employee's unemployment benefits claim that employee had been terminated for "misconduct"; employee failed to show that her "misconduct" was anything other than her failure to file the necessary employment documents).

We hold that Jackson failed to produce controverting evidence raising a fact issue as to FedEx's retaliatory motive or nonuniform enforcement its post-injury drug screening policy. *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Cont'l Coffee Prods. Co.*, 937 S.W.2d at 444, 450–51; *Santillan*, 203 S.W.3d at 506; *see also Jordan v. BAE Automated Sys.*, No. 05-96-01488-CV, 1998 WL 242413, at *2 (Tex. App.—Dallas May 15, 1998, no pet.) (not designated for publication) (upholding summary judgment because appellant admitted in deposition that he was discharged for taking a pain pill without a prescription in violation of company's drug policy). Accordingly, we overrule Jackson's third issue.

## VI. CONCLUSION

Having overruled Jackson's three issues, we affirm the trial court's grant of summary judgment in favor of FedEx.

SUE WALKER
JUSTICE

14

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

DELIVERED: April 24, 2008

15